UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MELISSA A. RITCHIE,              ) | |
|                                                         ) | |
|       Plaintiff,                             ) | |
|                                                         ) | |
|           vs.                                    ) | CAUSE NO.  1:07-cv-1349-WTL-TAB |
|                                                         ) | |
| MICHAEL ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY,            ) | |
|                                                         ) | |
|       Defendant.                         ) | |

### ENTRY REVIEWING COMMISSIONER'S DECISION

The Plaintiff, Melissa A. Ritchie, brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI").  The Court, having reviewed the record and the briefs of the parties, rules as follows.

### Background

Ritchie was born in 1966 and was forty years old at the time of the ALJ's decision.  She was a high school graduate and had completed two years of college and received an associates degree.  Her past relevant work included positions as a cashier, a receptionist, and a routing clerk.

Ritchie applied for DIB and SSI in February 2004 alleging that she became disabled as of July 7, 2003, due to degenerative disc disease of the lumbar spine, pseudoseizures, status post cerebrovascular accident, status post hairline ankle fracture, major depression, and anxiety disorder.  The medical records submitted by Ritchie in support of her claim of disability are quite voluminous and will not be summarized here; rather, the Court will discuss below the evidence

that is relevant to the issues that are dispositive to this appeal.

Ritchie's applications were denied initially and upon reconsideration, after which Ritchie requested and received a hearing before an administrative law judge ("ALJ"). At the hearing, which was held on September 13, 2005, Ritchie, a medical expert, and a vocational expert testified. On January 29, 2007, the ALJ issued her decision in which she found that Ritchie was not disabled. The Appeals Council denied Ritchie's request for review, leaving the ALJ's decision as the final decision of the Commissioner. It is from that decision that Ritchie now appeals.

**Applicable Standard**

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of

Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 404.1520(d).  At step four, if the claimant is able to perform her past relevant work, she is not disabled.  20 C.F.R. § 404.1520(f).  At step five, if the claimant can perform any other work in the national economy, she is not disabled.  20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).  The ALJ is required to articulate only a minimal, but legitimate, justification for the ALJ's acceptance or rejection of specific evidence of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).  In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

## Discussion

In this case, at step one the ALJ found that Ritchie had not engaged in substantial gainful activity at any point after her alleged onset date.  At step two, the ALJ found that she had the following severe physical impairments: degenerative disc disease of the lumbosacral spine, pseudoseizures, status post cerebrovascular accident, status post hairline fracture of the left ankle, major depression, and anxiety disorder.  At step three, the ALJ found that these

impairments did not meet or medically equal any impairment that appears in the Listing of Impairments. At step four, she found that during the relevant time period Ritchie retained the residual functional capacity to perform her past relevant work as a cashier II and a routing clerk as those jobs are generally performed in the national economy, although not at the exertional level required by her particular prior positions. Consequently, the ALJ determined that Ritchie was not disabled during the relevant time period. Ritchie objects to these findings on several grounds.

*ALJ's Findings Regarding Ritchie's Pseudoseizures*

The ALJ's written decision is extremely thorough, especially with regard to Ritchie's pseudoseizures, and it is clear that the ALJ took great pains to review and carefully consider the large amount of evidence before her in arriving at her conclusion that Ritchie is not disabled. Given the fairly liberal "substantial evidence" standard used when reviewing an ALJ's decision, one might expect such a decision to be easily affirmed. Unfortunately, however, in this case there are several flaws in the ALJ's reasoning that require the case to be remanded.

First, with regard to step 3, as previously noted the ALJ found that none of Ritchie's severe impairments met or medically equaled a listed impairment. However, as Ritchie points out in her brief, the ALJ failed to address any listing specifically. The ALJ found that Ritchie has "a history of possible epilepsy greatly complicated from pseudoseizures induced by anxiety, as well as seizure-type activity resulting from benzodiazepine (i.e. Xanax) withdrawal and/or abuse," and indeed found that her pseudoseizures constituted a severe impairment. The Seventh Circuit has described pseudoseizures as follows:

> Pseudoseizures, also known as psychogenic seizures, nonepileptic seizures, and paraoxysmal nonepileptic episodes (PNES), resemble epileptic seizures but are not attributable to epilepsy or abnormal electric activity in the brain. Ronald P.

> Lesser, *Treatment and Outcome of Psychogenic Nonepileptic Seizures, Epilepsy Currents*, Nov. 2003, at 198. No single cause of psychogenic seizures has been identified, but they are typically attributed to an underlying psychological disturbance. *Id.* Those who have been victims of physical or sexual abuse seem to be at greater risk for developing pseudoseizures. *Id.* Some symptoms of a pseudoseizure disorder can be treated with medication, but psychological therapy, not medication, appears to be the preferred course of treatment. *Id.*

*Boiles v. Barnhart*, 395 F.3d 421, 422 (7th Cir. 2005). Depending on their severity and frequency, epileptic seizures can render a person disabled, *see* Listings 11.02 and 11.03, and it follows that pseudoseizures, which can produce the same symptoms, also can be disabling. *See Boiles*, 395 F.3d at 421. However, the ALJ failed to address whether Ritchie's pseudoseizures equaled Listings 11.02 or 11.03. This was error, especially in light of Ritchie's testimony that she experienced seizures daily and that they left her feeling confused and often required her to lie down. Record at 1606-07; *see, e.g.,* Listing 11.03 (requiring "a typical seizure pattern, including all associated phenomena" occurring more frequently than once weekly and accompanied by "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day").

In addition to her failure to consider Listings 11.02 and 11.03, the ALJ's consideration of the evidence regarding Ritchie's pseudoseizures was improper in several other respects.[1] Despite a lengthy discussion regarding Ritchie's seizures, the ALJ concluded that her pseudoseizures were not disabling based in large part upon the following statement in the report of Dr. Andrew Skinner, who performed a psychiatric evaluation (for the purposes of treatment)

---

[1] The suspect findings, while discussed by the ALJ under the step 3 heading, are also relevant to the ALJ's residual functional capacity finding and therefore to her determination at step 4.

5

of Ritchie in October 2004: "Her pseudoseizures may occur frequently as an expression of her distress, but the pseudoseizures themselves represent no danger to her." Record at 558 (referenced in ALJ's decision in Record at 36). The ALJ's reliance on this statement is troubling. "Danger" is not synonymous with "disabling," and Dr. Skinner's report does not elaborate in any way with regard to what he meant by that statement, which was not given in the context of making a disability determination or opining about Ritchie's ability to work.[2]

In addition, while the ALJ recognized that there was some objective evidence, in addition to Ritchie's own testimony, that she suffered from epileptic seizures as well as pseudoseizures, the ALJ determined that any "legitimate seizures" Ritchie may have had were caused by withdrawal from the anti-anxiety medication Xanax. Record at 38 (finding that Ritchie's seizures "occurred either as a result of pseudoseizures, or else coincided with Xanax withdrawal"). The record clearly supports the ALJ's finding that Ritchie had developed an addiction to Xanax and other benzodiazepines which had been prescribed by various doctors for many years to treat her pseudoseizures (or, perhaps more accurately, to treat the anxiety that triggered her pseudoseizures). Several doctors noted Ritchie's drug-seeking behavior as she tried to obtain prescriptions for Xanax after her treating physicians determined that it was in her best interests to stop taking it, and, as the ALJ notes, Ritchie was hospitalized in November 2004 for seizures which the emergency room physician attributed to Xanax withdrawal.[3] However, as the ALJ's decision acknowledges, there is no suggestion in the medical records that all of

---

[2] The Court notes that Dr. Skinner stated in his report that he does not "treat seizures primarily" and that he informed Ritchie that he would "not be responsible for treating her seizure disorder," Record at 558, and therefore his opinions regarding her seizures are of questionable relevance.

[3] Notably, that doctor discharged her from the hospital with a prescription for Xanax.

Ritchie's seizures are caused by Xanax withdrawal.

In fact, while the ALJ noted that Ritchie would not be entitled to benefits for seizures that were caused by drug addiction, she did not base her denial of benefits on that fact. Rather, the ALJ found that Ritchie's seizures–whatever their cause–were found by Dr. Skinner to "pose[] no significant risk," and therefore she determined that, "by inference, [they] would not be substantially limiting." Record at 38. As noted above, the leap from Dr. Skinner's comment to a finding that Ritchie's seizures are not disabling is one that the Court is unwilling to accept. The ALJ further found that Ritchie's "relatively advanced level of daily activities" supported the inference that her seizures were not disabling. That finding, too, is troublesome. The only daily activities the ALJ mentioned in that context[4] were "the claimant's ability to drive without medical restriction" and "her ability to independently use public transportation." The ALJ explained her reasoning as follows:

> Specifically, that the claimant's cousin . . . as well as the claimant herself reported that she was medically restricted from driving due to seizures. However, the record contains little evidence of any permanent driving restrictions from any treating or examining medical source. Indeed, there is documentation of at least one instance in which the claimant injured her left ankle while "she was getting out of her car" . . . demonstrating that she did possess a car, which she drove. The claimant's cousin, while denying that the claimant drove, did admit that she independently used public transportation. I note that the record contains no medical reports, or even subjective complaints from the claimant, of any seizure-type activity that occurred on the bus. The lack of any permanent medical restrictions on driving, the fact that the claimant indeed evidently did drive, and her independent use of public transportation, apparently without mishap, would all seem to support a conclusion that the claimant's pseudoseizures imposed no substantial risk or limitations for the claimant.

---

[4]The ALJ noted later in her decision that Ritchie also did her own grocery shopping when she felt up to it, prepared simple meals, did some housekeeping, and cared for her special needs son. However, minimal daily activities such as these do not establish that a person is capable of engaging in substantial physical activity. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Record at 38-39.  In fact, the record does contain support for Ritchie's testimony that she is medically restricted from driving; her treating physician, Dr. Ong, indicated on a physical residual functional capacity assessment that he completed in December 2004 that Ritchie was totally restricted from driving automotive equipment.  Record at 524.  Further, it was entirely unreasonable for the ALJ to conclude that Ritchie and her cousin lied when they claimed that Ritchie did not drive simply because a nurse noted on an intake form that Ritchie was injured while "getting out of her car."  Whose car Ritchie was getting out of was completely irrelevant to her medical care; thus, the nurse had no reason to be precise with her language with regard to that particular note and her use of "her car" instead of "a car" certainly does not constitute substantial evidence that Ritchie and her cousin lied with regard to Ritchie's driving habits.[5]

       The ALJ's reasoning with regard to Ritchie's use of public transportation is similarly flawed.  The "admission" by her cousin is contained on a "function report" that she completed in support of Ritchie's application for benefits.  On the form, Ritchie's cousin indicated that Ritchie went outside "weekly on errands" and that she would "ride in a car" or "use public transportation" to do so.  She then made the following comment:  "Melissa does go out alone [with] public transportation, but this makes me nervous because she falls sometimes."  Record at 136.  There is no suggestion, then, that Ritchie used public transportation frequently–indeed, the form would suggest that she did so less than once a week, since it indicates that she ran errands "weekly" and her cousin states earlier on the form that she drove Ritchie to some of her errands.  It is simply illogical to conclude that the fact that Ritchie was willing to occasionally venture out on the bus to take care of errands when no one was available to drive her means that she was not

---

[5]Indeed, even if it had been Ritchie's car, she was not necessarily the person driving it.

substantially limited in her ability to work or do other activities.

As previously noted, the ALJ was required to "build an accurate and logical bridge from the evidence to her conclusion." *Scheck*, 357 F.3d at 700.  She failed to do so with regard to her consideration of Ritchie's pseudoseizures and their effect on her ability to work.  The ALJ found that she did suffer from pseudoseizures and that those seizures constituted a severe impairment, but she failed to make any findings regarding the frequency of the seizures, their manifestations, and their effect on Ritchie's ability to function both during and after them.  Without those findings, it was impossible for the ALJ to determine whether Ritchie's pseudoseizures equaled Listing 11.02 or 11.03, which would require a finding of disability.  Further, as discussed above, in determining Ritchie's residual functional capacity the ALJ improperly rejected Ritchie's testimony[6] regarding the effects of her seizures based upon illogical leaps from isolated bits of the record.  It is therefore necessary to remand this case so that the issue of whether Ritchie is disabled due to her pseudoseizures can be properly considered.

*Ritchie's Other Arguments*

Ritchie asserts several other arguments, none of which are meritorious.

First, Ritchie argues that the ALJ erred at Step 4 when she found that Ritchie could perform her past relevant work even though she could not perform the particular jobs she had performed in the past because those jobs were more physically demanding than the norm.  This argument is without merit.  "[T]he ALJ need not conclude that the claimant is capable of returning to the precise job he used to have; it is enough that the claimant can perform jobs

---

[6] The Court notes that both physicians who had treated Ritchie's seizures for a substantial length of time submitted reports that indicated that they believed Ritchie was unable to work due, at least in large part, to her pseudoseizures.

substantially like that one." *Getch v. Astrue*, 539 F.3d 473 (7th Cir. 2008). The ALJ properly relied upon the testimony of a vocational expert that a person with the residual functional capacity found by the ALJ could perform Ritchie's past relevant work as it is generally performed in the national economy, even though the unusual lifting requirements in her actual past jobs put them beyond that residual functional capacity.

Next, Ritchie argues that the ALJ failed to consider the affect of her obesity on her residual functional capacity. However, the ALJ's decision makes it clear that the ALJ was aware of and did consider the possibility that Ritchie's obesity amplified some of her symptoms, and Ritchie points to no specific evidence or testimony with regard to the effects of obesity on her residual functional capacity that the ALJ should have addressed.

## Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED,** pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Entry.

SO ORDERED: 01/22/2009

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov